John J. Caldwell, and Anna R. Caldwell, his Wife *vs.* Stewart Brown and John I. Yellott, Trustees.

*Power of Attorney—Authority to Compromise—Ratification of Compromise by Court of Equity—Validity of Title under Sale.*

While the will of a testator affecting real estate was being contested by his heirs-at-law, one of the heirs conveyed her interest in the estate to a trustee to raise money for certain specified purposes, and as to the residue, to apply the net income to the support of the settlor and her two unmarried daughters, and from and after her death, as to all the said residue of said property, in trust to belong to and be equally divided *per stirpes* among all her children and

Caldwell and Wife *vs.* Brown and Yellott, Trustees.

descendants of her children then deceased. By the same deed the trustee was appointed the attorney of the settlor to sue for and recover by all lawful means the said property, and generally on behalf of the settlor to conduct and manage said litigation to a final conclusion. HELD:

1st. That a fair and judicious compromise made by the trustee, by which the title of the settlor as heir-at-law was established, was strictly within the powers conferred by the deed.

2nd. That a Court of equity, being satisfied by proper proof that the compromise thus made was for her interest, and the interest of all parties concerned in the litigation, had the power to ratify it, and, if necessary, to decree the sale of so much of the property as might be necessary to carry it into effect.

3rd. That under such a sale a valid title would pass, not only as against the settlor and her children then living, but also against the descendants of her children.

APPEAL from the Circuit Court for Baltimore County, in Equity.

This appeal is taken from a decree overruling exceptions to a sale. The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., ROBINSON, IRVING, and BRYAN, J.

*Arthur George Brown,* for the appellants.

*Arthur W. Machen,* for the appellees.

ROBINSON, J., delivered the opinion of the Court.

John T. Johns died seized of a large and valuable real estate, leaving behind him *six papers,* purporting to be testamentary dispositions of his property. To each of these alleged wills, *caveats* were filed by Sarah M. Hodges and Anna Caldwell his heirs-at-law. After a protracted and costly litigation, the *caveats to five of these alleged wills* were sustained, and the wills set aside. This left

but one will, the will of August, 1866, for further litigation. All the parties being anxious to avoid further litigation, and the expense, delay and uncertainty incident thereto, agreed to compromise their several claims and pretensions, by the terms of which, the claimants under the will agreed, in consideration of the sum of $16,000, to be paid to them, to relinquish all interest in the estate of the said Johns.

A bill was then filed in the Circuit Court for Baltimore County, in equity, alleging that it was to the interest of all parties in anywise interested in said estate, that the compromise thus agreed upon should be carried out, and praying: 1st. That the compromise agreement may be ratified and approved, and 2dly. That Edwin Fitzgerald, trustee, to whom Mrs. Hodges had conveyed all her interest in said estate upon certain trusts, be authorized to unite with Mrs. Caldwell in making a sale or mortgage of so much of the real estate of the said Johns as might be necessary to raise the sum of $16,000, which was to be paid under the compromise.

Testimony was taken to prove that it was to the interest and advantage of all the parties, that the compromise should be carried out, and the Court upon full consideration of said testimony and by the consent of all the adult parties to the suit, and the guardians of the infants, passed a decree, ratifying said compromise and appointing appellees to sell or mortgage property sufficient to raise the sum of $16,000 required to be paid under it.

In pursuance of this decree, the appellees as trustees, agreed to sell one of the farms to the appellant, Mrs. Caldwell, for the sum of $30,000, but objection was afterwards made to the title to be conveyed by them, founded entirely upon the *deed of trust* which was executed by Mrs. Hodges, pending the litigation. This deed after reciting the objects and purposes for which it was made, conveyed to Fitzgerald the entire interest of Mrs. Hodges in the estate of

the said Johns upon the following trusts : To sell so much of said property, as may be necessary to repay him all sums of money advanced, or to be advanced by him for counsel fees and expenses connected with said litigation, and all sums advanced for the support of Mrs. Hodges and her two unmarried daughters, and 2ndly. As to the residue to apply the net income to the support of Mrs. Hodges and her two unmarried daughters, and 3rdly. From and after her death, as to all the said *residue*, of said property in trust, to belong to and be equally divided *per stirpes* among all her children and descendants of her children then deceased.

By the same deed, Fitzgerald was appointed the attorney of the settlor with full power and authority to sue and *recover by all lawful ways and means the said property*, and generally on behalf of the said Sarah and her share of said estate to *conduct and manage* said litigation to a final conclusion.

It thus appears, that the *residue* of the property in the hands of the trustee, was after the death of Mrs. Hodges, to be divided *per stirpes* among her children, and the descendants of her children then deceased.    Now it is conceded that independent of the Act of 1868, ch. 273, Courts of equity have no jurisdiction to deal with estates of unborn children.    That Act however provides, that in all cases where one or more persons, are entitled to an estate for life, &c., with a remainder over, or an executory devise, in the same land, a Court of equity may, upon proper proceedings instituted for that purpose, decree a sale of said property, &c., and shall direct the investment of the proceeds of sale so as to enure in like manner as in the original grant, to the use of the same parties who would be entitled to the land thus sold.    And the argument is, that although a Court of equity has power to decree the sale of land in which the unborn children of Mrs. Hodges may have an interest, yet the proceeds of

sale must be invested in the manner prescribed by the Act of 1868; and that a decree for the sale of land for the purpose of raising money to compromise litigation, is not within the terms of the Act.

Whatever force there may be in this contention, we are of opinion, that looking to the objects and purposes for which the deed was made, and the trusts therein declared, and the large and ample powers conferred on Fitzgerald as attorney, to sue and recover by all *lawful ways and means* the said property, and to *conduct and manage said litigation to a conclusion*, that a fair and judicious compromise made by him, by which the title of Mrs. Hodges as heir-at-law was established, is strictly within the powers conferred by the deed. And for this that a Court of equity being satisfied by proper proof, that the compromise thus made was for her interest, and the interest of all parties concerned in the litigation, has the power to ratify it, and if necessary to decree the sale of so much of the property as may be necessary to carry it into effect. Under such a sale a valid title would pass, not only as against Mrs. Hodges and her children now living, but also against the descendants of her children.

By the express terms of the deed Fitzgerald was authorized and empowered as attorney to sue for and *recover by all lawful ways and means the said property*, and to manage and conduct the litigation in regard to Mrs. Hodges' share in the estate to a final termination. Until there was an end to the litigation nothing vested or could vest in the children or their descendants. The only question it seems to us is, whether a compromise is a lawful *way or means* of bringing the litigation to a conclusion? The main object of the deed of trust was to enable the trustee, and the attorney therein appointed, to prosecute the litigation in regard to the alleged wills to a termination. And if this could be done by a fair compromise, instead of another trial involving large expenditures

of money, further delay, and uncertainty as to the result, such a compromise must be considered a *lawful way and means* of bringing the *litigation to a conclusion.* The proof shows beyond question, that it is to the interest of all parties that the compromise agreement should be carried into effect. All the adult parties, the trustee under the deed, and Mrs. Hodges the settlor, who has reserved to herself and the trustee the control of the whole estate until the litigation is concluded, affirm it to be so. For, these reasons the decree below will be affirmed.

*Decree affirmed.*

(Decided 17th December, 1886.)